UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

    -against-                                  18 Cr. 92 (WFK)

PPASSIM ELDER, et al.,
                Defendants.

———————————————————————

MEMORANDUM OF LAW IN SUPPORT OF
MOTION PURSUANT TO RULE 29(c) OF THE
FEDERAL RULES OF CRIMINAL PROCEDURE.

                        Thomas H. Nooter (TN-8080)
                        Attorney for Defendant Elder
                        Freeman, Nooter & Ginsberg
                        75 Maiden Lane, Suite 503
                        New York, NY 10038
                        (212) 608-0808
                        Cell phone: (917) 847-1361
                        Email: nooteresq@gmail.com

                        and John F. Kaley, Esq.
                        Co-counsel for Defendant Elder
                        217 Broadway, Suite 707
                        New York, NY 10007

Dated: November 10, 2021

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Facts related to the "advance knowledge" require for aiding
    and abetting a 924(c) charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Facts related to the sufficiency of the "murder" charge . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT I:  FOLLOWING THE HOLDING OF THE SUPREME
    COURT IN *ROSEMUND v. UNITED STATES* ON AIDING AND
    ABETTING THE USE OR CARRYING OF A FIREARM THE
    EVIDENCE WAS NOT SUFFICIENT TO MAKE EVEN A PRIMA FACIE
    SHOWING THAT MR. ELDER HAD "ADVANCE NOTICE" THAT A
    FIREARM WOULD BE USED TO COMMIT THE CRIME OF
    EXTORTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT II:  THE ARGUMENTS MADE BY CO-COUNSEL AND
    IN MR. ELDER'S PRE-TRIAL MOTIONS ARE RENEWED
    AND INCORPORATED HEREIN.

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Preliminary Statement

Defendant Ppassim Elder respectfully moves this Court to set aside the verdict and enter a judgment of acquittal on all counts of the indictment, and specifically argues herein that Counts Two, Seven, Eight, Nine and Ten must be vacated because of the insufficiency of the evidence presented to meet the legal standards of the statutory violations charged in those counts. Mr. Elder also joins in Mr. Bryant's post-judgment motion in full.

Statement of Facts

First, the facts related to the charges of carrying a weapon in furtherance of a crime of violence and causing death by use of a weapon so carried, as stated in defendant Mr. Elder's pre-trial motion in limine, are consistent with what the evidence adduced at trial.  That being said, we renew our argument that a theory of felony murder cannot be predicated on any offence other than those listed in 18 U.S.C. §1111(a). We also join in the additional arguments made in Mr. Bryant's

Furthermore there was no evidence adduced at trial to support a finding of "malice aforethought." Indeed, the government's only attempt to prove the malice aforethought element was through the felony-murder theory.

<u>Facts related to the "advance knowledge" require for aiding and abetting a 924(c) charge</u>:

With respect to the charges in Counts Nine and Ten involving "aiding and abetting" the use or carrying of a firearm in furtherance of any crime, the evidence was not sufficient to show that Mr. Elder had "advance knowledge" that a gun would be used or carried. There was no proof of an agreement to use or carry a firearm in connection with the alleged attempt made by McCoy, Mr. Bryant, and Ling to collect money by use of force or violence on October 23, 2017.

The relevant facts of the alleged aiding and abetting by Mr. Elder of the plan to collect the money all came from the testimony of the co-conspirator cooperator Frederick McCoy, with some corroboration of dates of contacts and meeting between McCoy and Mr. Elder and other alleged co-conspirators, but with no other corroboration of the contents of the conversations at meetings or by telephone.

The chronology of the making of those plans starts with a conversation in "late" September, 2017, between McCoy and Mr. Elder in which Mr. Elder said "it would be best" if McCoy and his accomplices "went with a gun to put the fear of God into him." There was no further discussion between McCoy and Mr. Elder about a gun. There were two conversations between McCoy and Ling about having Ling be part of the plan and having Ling bring a firearm: the first was about one week before the incident (one week before October 23, 2017), and the

second was a few days before the incident. McCoy testified that he himself did not know that Ling had obtained a gun until the day of the incident.

At trial McCoy testified that Mr. Elder offered McCoy payment to attempt to collect $50,000 he said was owed to him by Mahmoud Kasem some months prior to the incident, and that McCoy intended to "retrieve" the money Mr. Elder told him was owed to Mr. Elder by Kasem for a share of the proceeds. Trial, at 339, 353-354, and 356.

McCoy testified that the first and only conversation with Mr. Elder where using a gun was mentioned was at a meeting at a Dunkin Donuts in "late September with McCoy, Mr. Elder, and Mr. Bryant. At that while discussing efforts to "get back" the money, McCoy testified about Mr. Elder: "He told us, you know, it would be best if we went with a gun to put the fear of God in him." Trial, 357. Nevertheless, McCoy testified that his "reaction" was merely "I told him we'll think about it" and that Mr. Bryant's "reaction" was "We'll think about it." Trial, at 357. The government did not adduce and there was no basis for the jury to infer that Mr. Elder had requisite foreknowledge that a gun would be involved.

At no point in the chronology of events that followed, leading up to the day of the incident did McCoy say that he either confirmed to Mr. Elder that they would use or carry a weapon, or that he had contacted Ling to obtain a weapon

and that Ling had agreed to do so and in fact did bring a weapon on October 23, 2017. Indeed, McCoy testified that he, himself, only knew for sure that Ling had brought a gun on the morning of the killing (October 23, 2017). Trial, at 368.

McCoy testified that he contacted Ling about getting a weapon (and being part of the group that would attempt to collect the money, which did NOT include Mr. Elder), "about a week" prior to the incident on October 23, 2017. Tr. 364. McCoy testified that Mr. Ling's "reaction" was "He didn't – he didn't say no." Trial, at 365.

The testimony that Ling was only to be paid by McCoy and Mr. Bryant further corroborates that Mr. Elder was not involved in the decision to bring Ling and his gun into the crime. McCoy also testified that Ling was going to be paid out of McCoy's and Mr. Bryant's share of whatever Mr. Elder was supposed to give them, NOT by Mr. Elder. See Trial at 365, "A. Yes, he would have got a PC. Q. Again, what's a PC? A. A percentage of what me and La [Mr. Bryant] would have gotten." See also, Trial at 419.

McCoy testified that thereafter there was a second conversation between himself and Ling where Ling agreed to the plan: "He said he was with it. He was willing to participate in it." Trial, p. 366. When asked for McCoy's understanding of that McCoy testified, "That <u>evidently</u> he has acquired the gun and he was ready

-4-

for – we were ready." [Emphasis added.] Trial, at 366. McCoy did NOT state what day that meeting occurred. The evidence of the timing of this is most clear during the cross-examination of McCoy where he was asked "Q. But you brought him in for that; correct? A. Yes, for that purpose. Q <u>Just a few days before October 23, 2017</u>; right? A Yes." Trial, at 419 [Emphasis added.]

    McCoy testified that he was only sure that Ling had obtained a gun on the morning of the killing (October 23, 2017). Trial, at 368. McCoy testified that the last conversation he had with Mr. Elder, which was by telephone, was about four days prior to October 23, 2017. Trial, at 481, 482 ("Q: But you didn't talk to him [Mr. Elder] for four days before you walking in there and ended up walking out with someone dead, correct? A: Yes."). McCoy did not relate the content of that conversation.

<u>Facts related to the sufficiency of the "murder" charge:</u>

    Third, with respect to the arguments being renewed from the pre-trial motion and the Rule 29 motion made at the close of the government's case, the only substantial deviation from the "prediction" made in the pre-trial motions as to what evidence would be proffered by the government in support of Counts Nine and Ten (the weapons counts) is that there was never any showing that Mr. Mr. Elder had any knowledge (prior to the shooting of Mr. Kasem) of Ling having

been brought into the scheme to collect funds from Mahmoud Kasem, or more specifically, that Ling would agree to bring a firearm and that he indeed did bring a firearm. The facts may have been consistent with a scheme to commit "extortion" which, as was argued, was not a crime of violence and was not a predicate crime for "felony murder." Specifically McCoy insisted that the crime "was not a robbery" (which would have been such a predicate). See Trial at 447: "I don't recall that, me saying I've done a robbery because it wasn't no robbery ... It was not no robbery, sir."

Fourth, with respect to the arguments being joined in with Mr. Mr. Bryant in his post-trial motion with respect to Count Two: there was no evidence linking Mr. Elder to the use of Mr. Bryant's bank account to process a payment from a "Thomas Hardy" (who did not testify), or that any use of the account was one in which Mr. Mr. Elder, and not Mr. Mr. Bryant, was the beneficial owner of the account. Trial at 347-348, 835-857, and the related government exhibits.

Argument

POINT I

FOLLOWING THE HOLDING OF THE SUPREME COURT IN *ROSEMUND v. UNITED STATES* ON AIDING AND ABETTING THE USE OR CARRYING OF A FIREARM THE EVIDENCE WAS NOT SUFFICIENT TO MAKE EVEN A PRIMA FACIE SHOWING THAT Mr. Elder HAD "ADVANCE NOTICE" THAT A FIREARM

WOULD BE USED TO COMMIT THE CRIME OF EXTORTION.

In *Rosemund v. United States*, 572 U.S. 65 (2014) the Supreme Court established a special rule for aiding and abetting the use or carrying of a firearm charged in violation of 18 U.S.C. §924(c). The Court held that in order for an accomplice to a crime for which a firearm was used to be guilty of using or carrying a firearm where the accomplice was not the individual who personally used or carried the firearm, that the person being charged as an accessory must have sufficient "advance notice" that a firearm will be used or carried to permit him an opportunity to withdraw from the commission of the crime. The Court correctly charged the jury on this requirement of the law, but we submit that the evidence itself was not sufficient to support the advance knowledge requirement for Mr. Mr. Elder, who was not present when the firearm was carried and used.

The Supreme Court has explained that without advance knowledge a defendant cannot be guilty of aiding and abetting a firearms offense:

> the §924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he

may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. Id., at 78.

The testimony and evidence at trial only showed that McCoy and Mr. Elder had one conversation about using a firearm to "retrieve" the money owed, and that the entire conversation was Mr. Elder saying to McCoy: "He told us, you know, it would be best if we went with a gun to put the fear of God in him." Trial, 357. This was a month prior to the incident. Furthermore there was no agreement by McCoy to bring a gun whenever he might try to retrieve the money ("I told him we'll think about it." Id., at 357). There was no evidence that there was any other conversation with Mr. Elder about the use of a weapon or the involvement of Ling.

It is clear that under the law of being an aider and abettor (as defined in 18 U.S.C. §2) there has to be an agreement between the principal. The statement made by Mr. Elder that "it would be best if [they] went with a gun to put the fear of God into him," does not amount to an agreement. Here, Ling [who had the gun] or arguably McCoy [because he made the arrangements and then used the gun to hit Mahmoud Kasem] and the aider and abettor [Mr. Elder, who was not present, never met or heard of Ling, and apparently had no confirmation that a gun was going to be brought to the scene of the shooting].

The Statute states:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Modern Federal Jury Instructions-Criminal P 11.01 (2021) Instruction 11-2 Aiding and Abetting, states, in part, that the government must prove the following to show accessorial liability as an aider and abettor:

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, **and that he participate in the crime by doing some act to help make the crime succeed**.

To establish that defendant knowingly associated himself with the crime, the government must establish that the defendant [intended that a firearm be used or carried ](In cases involving 18 U.S.C. § 924(c), add: In addition, the government must prove that the defendant had advance knowledge that [the principal] would be using or carrying a firearm during the commission of the [underlying crime.].

To establish that the defendant participated in the commission of the crime, the **government must prove that defendant engaged in some affirmative conduct or overt act** for the specific purpose of bringing about that crime. [Emphasis added].

It should be noted here that the crime is the crime of using or carrying a firearm, NOT the crime of extortion.

In *United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) the Circuit

-9-

approved of the instruction by the late Honorable Arthur D. Spatt (E.D.N.Y.) where he stated as follows: "An aider and abettor, the district court said, must '**know that the crime is being committed** and act in a way which is intended to bring about [its] success.'" [Emphasis added.] Again, this refers to the weapons aspect of the criminal scheme. Id., at 239.

While there may have been plan for McCoy and his accomplice to go into the Kasems' storefront to "retrieve" the money there was no plan between Mr. Elder and McCoy to do that with a firearm. After McCoy developed his own plan, he recruited Ling to bring a gun, and went in without letting Mr. Elder know that it was actually happen or how. Thus, the use of a weapon became a crime committed by McCoy and Ling as aiders and abettors, but not by Mr. Elder. He did not have the opportunity to withdraw from the scheme. Most important, he did not counsel, command, induce, procure, or cause the crime (of using or carrying a weapon) simply by throwing out the suggestion – which was not agreed to by McCoy – that "it would be best if [they] went with a gun to put the fear of God into him."

As a result of this failure of evidence both Counts Nine and Ten must be dismissed (Count Ten cannot stand if Count Nine is dismissed).

POINT II

MR. ELDER JOINS IN THE ARGUMENTS OF
MR. BRYANT AN D RENEWS THE ARGUMENT
MADE IN HIS PRE-TRIAL MOTIONS.

Mr. Elder joins in the arguments made by co-counsel and in his pre-trial motions which are renewed and incorporated herein.

Conclusion

For the foregoing reasons the convictions on Counts Two, Seven, Eight, Nine and Ten must be vacated because of the insufficiency of the evidence.

Dated:    New York, New York
          November 10, 2021

                                    Respectfully submitted,

                                    *Thomas H. Nooter*
                                    Thomas H. Nooter (TN-8080)
                                    Attorney for Defendant Elder
                                    Freeman, Nooter & Ginsberg
                                    75 Maiden Lane, Suite 503
                                    New York, NY 10038
                                    (212) 608-0808
                                    Cell phone: (917) 847-1361
                                    Email: nooteresq@gmail.com

                                    and John F. Kaley, Esq.
                                    Co-counsel for Defendant Elder
                                    217 Broadway, Suite 707
                                    New York, NY 10007