FREEMAN, NOOTER & GINSBERG
— ATTORNEYS AT LAW —

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

*NY AND CALIF. BARS

75 MAIDEN LANE
SUITE 907
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696

February 7, 2023

Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
RE: United States v. Ppassim Elder, et al., 18 Cr. 92 (S-5) (WFK)

Your Honor:

We are writing this brief response to the government's sentencing memorandum in anticipation of the sentencing hearing tomorrow (February 8, 2023) of our client.

We apologize for the lateness of this letter, but the MDC was in one of its numerous lockdowns from last Friday through yesterday morning and we were not able to see Mr. Elder until yesterday.

This response will not address nearly all of the points raised by the government. We rely on our original submission with respect to any items that are not specifically addressed here.

Objections to the PSR (and government's) Guidelines calculations:

We continue to object to the calculations proposed by the Probation Department in paragraphs 88 through 93 of the PSR to the use of the "cross-reference" to U.S.G. § 2A1.1 (the murder guideline) with respect to the conspiracy to commit extortion of the Mahmoud Kasem. [Note that we contend that the "extortion" of Hani Kasem, while it may have been charged in the indictment, was not proved at trial: Mahmoud Kasem was the extortion victim for this conspiracy.]

First, we stand by the argument that the cross-reference section itself does not include "second degree" murders. The government argues that while the killing of Mr. Kasem was not premeditated and was not the result of the commission of one of the listed felonies which is a predicate for the alternative form of first degree murder commonly known as "felony murder," that the killing constituted "any other murder" because it was committed (without premeditation or any intent to kill any victim) in connection with the commission of a non-listed "other" felony,

-1-

specifically extortion. This is wrong. As we argued in various motions made prior to and during the trial with respect to the now-dismissed charge of violating 18 U.S.C. § 924(j)[using a weapon to kill someone],  second degree murder under 18 U.S.C. § 1111 does not include other "felony murders." That section is the only federal statute defining "murder" for federal prosecutions, so "all other murders" have to conform to the definition in 18 U.S.C. § 1111 itself.

The definition has two alternatives: 1) "the unlawful killing of a human being with malice aforethought," and 2) "felony murder," which is defined as a murder (where there was no malice aforethought with respect to killing anyone, or any intent to kill at all) when a death results from the commission of one of the listed felonies (which does not include extortion). For the first kind of murder – malice aforethought – the killing can constitute first degree murder only when the killing is done with extra factors: "...by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing..." The second form of murder – felony murder – is also first degree murder, if the killing occurs during the commission of one of the listed felonies. That leaves any other "killing with malice aforethought" as second degree murder. It does not leave any other killings committed in the commission of a non-listed felony as second degree murder, because "felony murder" definition only covers the only  situations were there is no "malice aforethought." Second degree murder would be killing without the aggravating factors in the first part of the second sentence of the statute (poison, lying in wait, etc.), where, for example, the killing was impulsive or caused by a mental state of depraved indifference to human life.

In this connection we refer to the testimony of the cooperating witness Frederick McCoy which established that the death was unintentional.  (See trial testimony of McCoy at transcript pp. 374-380 and 417.

In an Addendum to the PSR filed yesterday, Probation rejected our arguments and adhered to its position that 2A1.1 applies because, in Probation's view, the death was done "with malice aforethought."  Not only is this an incorrect statement of the law of felony murder but it ignores the record testimony of McCoy who stated unequivocally that the death was unintentional.  On this record, there was no "malice aforethought."

Moreover, in order to find use of the first degree murder Guidelines applicable and thereby hold Elder accountable for the "relevant conduct" of Ling, Bryant and McCoy, the record would have to support the conclusion – which it does not – that the death of Hani Kasem by Ling, Bryant, McCoy was within the scope of the Elder's criminal agreement **and** was forseeable to him. *United States v. Johnson*, 378 F. 3d 230, 238 (2d Cir. 2004).  The issue in *Johnson* was whether the Court could consider a murder as relevant co-conspirator conduct when sentencing the defendant Johnson, who had no part in the act of murder.  Upon a review of the record in that case, the Second Circuit concluded that there was insufficient evidence to establish that the murder was within Johnson's agreement with his co-defendants and was forseeable to him.  As such, the Court concluded that it was error to use the death to enhance Johnson's sentence.

Here, given McCoy's testimony it is plain that none of the defendants intended the death of Hani Kasem, that none of the defendants agreed to cause his death, and that Hani Kasem's death was unintentional and that same was not forseeable.

For these reasons, along with those set forth in our initial sentencing submission, the PSR's utilization of 2A1.1 to set the Guidelines for Counts 7 and 8 (which in turn affects the overall Guidelines calculation under the "grouping" provisions of the Guidelines, is error.

To the extent that the Court ruled on the interpretation of the first and second degree murder provisions of 18 U.S.C. § 1111 in motions made by the defense attacking the legal viability of counts nine and ten because those rulings are now moot (because counts nine and ten were dismissed on the government's motion) we ask the Court to reconsider this issue *de novo* for the purposes of this sentencing proceeding in light of the arguments made herein and in the defendant's initial sentencing memorandum.

The argument by the government that the "cross-reference" section includes second degree murders is irrelevant because what happened to Mr. Kasem cannot be deemed to be "second degree murder" as just discussed.
'
Objection to the role calculation for the bank fraud counts:

The government asserts that because the four bank fraud counts are "grouped" that the number of participants and the complexity of the scheme [which was not especially complex even if committed repeatedly] should be increased by including the participants in each of the separate counts as if there had been only one bank fraud conspiracy with multiple participants, multiple victims and multiple acts of fraud. We contend that by separating the charges into four counts the government is precluded from making that argument. The reference by the government to the definition of "relevant conduct" in U.S.S.G. § 1B1.3 Application Note 5(A) is being misread by the government in making that argument. From the examples given in the Note it is clear that the base offense level is affected when multiple counts of criminal activity of the same kind are grouped (the drug weights for multiple smaller sales of drugs are aggregated, in the example given in the Note), but there is nothing that says that other enhancements which cannot apply to each of the separate counts can be aggregated to create a greater enhancement based on the fact that the crime was committed multiple times (as charged in separate counts of the indictment). We object to the PSR finding that there were more than five participants in any of the bank fraud counts based on combining all of the participants in the four counts of bank fraud.

Reference in the PSR to "other extortions," Paragraph 47 (the "baseball bat"::

Counsel stand corrected on the statement made in the original sentencing memorandum that Mr. Elder was seen with a bat was mentioned as evidence in the trial. We apologize for failing to remember the reference in the trial, but note that the facts as stated by the witness are still not sufficient to support a claim that Mr. Elder committed violence in connection to an

extortion. While it might be a fair interpretation that the bat he was seen holding might have been used or carried by Mr. Elder in the collection of a debt, that is not what he said, and the Court should give the defendant the benefit of the doubt rather than engage in speculation as to what, if any, relevance the bat had to the statement that Mr. Elder, who may have expressed an intention to "beat someone up" when he went to collect money owed, actually did so or actually used the bat.

References to and the Enhancement for the Obstruction of Justice allegations in PSR paragraphs 51 through 53 of the PSR

The government has provided transcriptions of telephone calls and a sealed report of a report of the allegation made in paragraph 53. We maintain that these do not support a finding that Mr. Elder obstructed justice by a preponderance of the evidence. With respect to the call to his brother made by Mr. Elder as transcribed at pages 10 through 11 of the government memorandum there was no reference by Mr. Elder to tampering with any witness. The fact that the brother wisely saw that reaching out to the family of Hani Kasem might be seen as tampering does not mean that the defendant intended that – indeed, he denies in the phone call that such was his intent. The ambiguity of the intentions of Mr. Elder in making the suggestion do not support an enhancement by a preponderance of the evidence.

Similarly, the reliance on the testimony of McCoy (rejected by the jury) that Mr. Elder made efforts to tamper with the investigation are not sufficiently reliable to support even a finding by a preponderance of the evidence that Mr. Elder was trying to obstruct justice. While Mr. McCoy's testimony was useful in supporting the convictions on other counts of the indictment, his testimony in those instances was supported by other, often unimpeachable, evidence (like GPS records). Where his testimony had no other corroboration the the jury wisely chose not to accept it to make a finding of guilt. Because of all of the reasons that co-conspirator cooperator testimony is deemed suspect this Court should similarly not rely on what McCoy said to make a finding of obstruction of justice.

Finally, it is not a fair assumption to conclude that Mr. Elder was trying to obstruct justice by making an innocuous congratulatory comment to AUSA Edelman. It was clearly stupid, but there could not possibly have been anything he could gain (by way of obstructing justice) by making the comment.

Additional letters of support:

Since the date we filed our sentencing memorandum we have received, by email, several more letters from family and friends which we will attach here for the Court's consideration.

Other points:

To the extent that other points advanced by the government in their sentencing

submission of February 2, 2023 have not been addressed herein, we rely on the arguments made in our original sentencing memorandum.

Thank you.

Sincerely,

 /s/ Thomas H. Nooter
Thomas H. Nooter

 /s/ John F. Kaley
John F. Kaley
Attorneys for Defendant Elder

cc:     AUSAs Genny Ngai and Anna Kramigios, by ECF
        Co-counsel, by ECF